**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 96-50749

---

STACY EVANS ROBARTS,
ANGELA S. EFFINGER,

Plaintiffs-Appellants,

versus

CATFISH PARLOUR INCORPORATED,
DON MILLER,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

(A-95-CV-210)

---

August 15, 1997

Before GARWOOD, BENAVIDES and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Appellants, Stacy Evans Robarts and Angela S. Effinger, appeal the district court's grant of

summary judgment on their claims of hostile work environment sexual harassment and quid pro quo

sexual harassment in violation of Title VII in favor of Appellees, Catfish Parlour Incorporated

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("Catfish Parlour") and Don Miller ("Miller"). Appellants contend that the district court reversibly erred in concluding that there was no genuine issue of material fact. For the following reasons, we affirm the summary judgment in favor of Appellees.[2]

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

Appellants, Stacy Robarts ("Robarts") and Angela Effinger ("Effinger"), both 18 years of age at the time of the conduct complained of and enrolled in high school were employed as hostesses at Catfish Parlour in the later half of 1993.[3] During this time, the restaurant was managed by Don Miller ("Miller"), a 60-year-old man. As the manager of the restaurant, Miller exercised complete authority over the terms and conditions of employment, including control over the hiring and firing of employees.

Robarts and Effinger complain that Miller made sexual advances and innuendos that resulted in their constructive discharge from their jobs. Robarts complains that Miller hugged and attempted to kiss her, frequently commented that she needed a "sugar daddy," suggested that she needed a man who would "take care" of her and that she should replace her boyfriend with an "older man . . . who would reward her sexual activity with some sort of tangible gift or money or support." At a meeting to discuss the difficulties she was encountering with other employees, Robarts alleges that Miller informed her of his sexual preferences and sexual problems in a manner that lead her to believe that he was propositioning her. Robarts reported to work one time after the meeting with Miller, a day

---

[2] Court of Appeals may ignore any erroneous holding of the district court and affirm judgment on other grounds. *Matthews v. Wozencraft*, 15 F.3d 432, 439 (5th Cir. 1994); *Degan v. Ford Motor Co.*, 769 F.2d 889, 892 (5th cir. 1989); *Church of Scientology v. Cazares*, 638 F.2d 1272 (5th Cir. Mar. 1981).

[3] Robarts was employed at Catfish Parlour from July 29, 1993 through September 2, 1993 and Effinger was employed from June 21, 1993 through November 23, 1993.

that Miller was not scheduled to work. She states that as a result of Miller's sexual advances and the meeting with Miller, she quit her job. Effinger complains that Miller began to make sexually suggestive comments to Effinger approximately four months after her employment. According to Effinger, the harassment continued for approximately two and a half weeks, ceasing upon Effinger's resignation. Effinger contends that Miller propositioned her to engage in a sexual relationship in exchange for payment in the form of favored treatment and gifts. Additionally, he stood inappropriately close to her, and told her on a regular basis that she needed a "sugar daddy." Miller informed Effinger to keep his "sugar daddy" comments secret. Effinger also complains that Miller told her that "women really don't need men because they have dildos, vibrators, and their hands." In one particular instance, while in Miller's office, Miller questioned Effinger about her personal relationships and described the possessions he had purchased for his lady friend, implying that Effinger could also have these things in exchange for sexual favors. After this encounter, Effinger was so frightened that Miller would physically assault her that she resigned.

Neither of the Appellants responded to Millers advances nor did they complain to the corporate office. According to the Appellants, the restaurant's owner, David Kerbow ("Kerbow") and Miller were very good friends.

Appellants filed suit against Catfish Parlour Inc. and Miller alleging hostile work environment sexual harassment and quid pro quo sexual harassment pursuant to Title VII. They also sued Miller alleging intentional infliction of emotional distress. Acting upon the Defendants' motion, the district court granted summary judgment holding that the conduct complained of was not sexual in nature and therefore not prohibited by Title VII.

**STANDARD OF REVIEW**

3

We review a district court's grant of summary judgment de novo, applying the standard articulated in Fed. R. Civ. P. 56(c). *Ward v. Bechtel*, 102 F.3d 199, 202 (5th Cir. 1997). Rule 56(c) mandates the entry of summary judgment against a party who has failed to make an evidentiary showing sufficient to establish an essential element of her case. *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In reviewing the district court's decision, we must consider all the evidence presented in the light most favorable to the non-movants. *Waymire v. Harris County, Texas*, 86 F.3d 424, 428 (5th Cir. 1996). "The motion is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict." *London v. MAC Corp. of America*, 44 F.3d 316, 318 (5th Cir. 1995). "If there is substantial evidence -- that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion -- then the motion should have been denied." *Waymire*, 86 F.3d at 428.

## DISCUSSION

A.     Hostile Work Environment

A hostile work environment claim arises when a plaintiff alleges harassment "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989). In order to establish a claim against an employer for hostile work environment sexual harassment, the plaintiff must show: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex;  (4) the harassment complained of affected a term, condition or privilege of employment; and (5) respondeat superior, i.e. that the employer knew or should have known of the harassment in question and failed

4

to take prompt remedial action. *Jones v. Flagship International*, 793 F.2d 714, 719-20 (5th Cir. 1986).

In the case *sub judice*, the district court concluded that Appellants' claim of hostile work environment sexual harassment failed because Appellants produced no evidence that Miller's conduct was sexual in nature[4] and that appellants had failed to establish that Miller's conduct was unwelcome. In the alternative, the district court also concluded that Miller's conduct did not rise to the level of the extremely insensitive conduct that affected the Appellants' opportunity to succeed in the workplace. Though we disagree with some of the district court's characterizations of the evidence, we affirm the grant of summary judgment.

To avoid summary judgment, Appellants were required to assert evidence of respondeat superior. We have held that an employer will be held liable for the discriminatory acts of an employee if it knew or should have known of the employee's offensive conduct and failed to take steps to repudiate that conduct and eliminate the hostile environment. *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 807 (5th Cir. 1996). An employee asserting a claim of hostile work environment sexual harassment must allege facts sufficient to demonstrate the employer had actual or constructive knowledge of the harassment. *Waltman*, 875 F.2d at 478. In this case, the Appellants concede that they did not complain about the harassment to management, thereby precluding a claim of actual knowledge. However on appeal, appellants assert that Catfish Parlour had constructive notice of Miller's conduct.

---

[4] The district classified Miller's conduct as a "non-sexual, paternal interest" and bragging. The court reasoned that since there were no pinches, grabs, groping, lip-to-lip kissing, or attempts at sexual closeness then there was not enough evidence to establish hostile work environment sexual harassment. It stated that there must be more in the way of sexual innuendo or contact than was present in the subject case.

Constructive notice can be demonstrated by showing the pervasiveness of the harassment which gives rise to the inference of knowledge or constructive knowledge. *Id*. Appellant Robarts asserts that Miller attempted to hug and kiss her, told her that she needed a sugar daddy, and in a private meeting informed her of his sexual preferences and problems. Appellant Effinger asserts that Miller's harassment occurred over a limited period of two and a half weeks and consisted of him standing too close to her, informing her that she needed a sugar daddy, and a comment that "women really don't need men because they have dildos, vibrators, and their hands." Though we find Miller's comments were completely inappropriate, Appellants failed to assert any facts from which it could be concluded that management should have known of Miller's conduct.[5] Moreover, the appellants unsupported assertion that other employees were aware of Miller's actions does not provide a basis for this court to infer that Catfish Parlour's management knew or should have known of the harassment. Therefore, we affirm the district court's grant of summary judgment as to the appellants' hostile work environment sexual harassment claim on the grounds that appellants failed to allege facts showing that Appellee Catfish Parlour knew or should have known of Miller's conduct.

B.     Quid Pro Quo Harassment

A claim of quid pro quo sexual harassment results when an employer requires sexual favors from an employee in exchange for concrete employment benefits. *Meritor Savings Bank, FSB v. Vinson*, 106 S. Ct. 2399, 2403 (1986). To establish a prima facie case of quid pro quo harassment, the plaintiff must demonstrate: (1) that she is a member of a protected group; (2) that she was subject

---

[5]  Appellants assert that Catfish Parlour's owner, David Kerbow, was a good friend of Millers and often participated in the harassment of waitresses. Appellants also assert that Kerbow had failed to respond to previous claims of sexual harassment. Because the record fails to produce any evidence to substantiate these arguments, we conclude they are insufficient to create a genuine issue of material fact

to unwelcome sexual harassment; (3) that the complained of harassment was based upon sex; (4) that her reaction to the harassment affected tangible aspects of the terms and conditions of her employment, with her acceptance or rejection of the harassment being either an express or implied condition to receipt of a benefit to or the cause of a tangible adverse effect on the terms of conditions of her employment; and (5) respondeat superior. *Ellert v. University of Texas at Dallas*, 52 F.3d 543, 545 (5th Cir. 1995). A review of the record reveals no evidence that Miller offered concrete employment benefits to either of the appellants in exchange for sexual favors. Appellants' assertions without more cannot support their claims of quid pro quo sexual harassment. Therefore, we conclude that the district court properly granted summary judgment as to appellants' claims of quid pro quo sexual harassment.

The judgment of the district court is therefore AFFIRMED.